Town of Saratoga et al. v. Jacobson et al., 193 Ill. App. 110.

Town of Saratoga and Town of Lisbon, Appellees, v. Benjamin Jacobson et al. Susan Duckworth and Richard Duckworth, Appellants.

Gen. No. 5,926.

1. ROADS AND BRIDGES, § 168*—*when water may be cast into highway.* A decree prohibiting the casting of water into a highway from an artificial channel without the consent of the highway commissioner, *held* not to prevent the flowage of water in its natural course.

2. ROADS AND BRIDGES, § 168*—*when natural flow of water onto highway may be accelerated.* A property owner may accelerate the natural flow of water by means of ditches to a point on his own land where it discharges itself over the natural surface onto an adjoining highway.

3. ROADS AND BRIDGES, § 168*—*when water may be discharged onto highway from artificial channel.* A landowner cannot bring water by artificial channels and discharge it in onto a highway at a point other than where it would naturally flow.

4. WATERS AND WATER COURSES, § 8*—*when discharge of water onto servient land may be artificially accelerated.* A person can artificially accelerate the natural flow from his land of water which would otherwise in a state of nature evaporate or seep into his soil, and cast it onto servient lands.

5. ROADS AND BRIDGES, § 168*—*when owner of land to middle of highway may cast water thereon.* The fact that a person owns land to the middle of a highway does not permit him to cast water thereon through an artificial channel at a point other than where it would naturally flow.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Town of Saratoga et al. v. Jacobson et al., 193 Ill. App. 110.

6. DRAINAGE, § 113*—*what drains are within "Ditches Construct-ed by License Act."* A tile drain constructed with the consent of the commissioner of highways, by a person from a point in a highway across his land and emptying into a natural water course, is a drain, within the meaning of the "Ditches Constructed by License Act" (J. & A. ¶¶ 4594 *et seq.*)

7. DRAINAGE, § 113*—*when connection may be made with drain built under "Ditches Constructed by License Act."* Third persons cannot connect drains with a tile drain built with the consent of the commissioner of highways, by a person from a point in a high-way across his own land, unless consent to the connection is given by the commissioner.

8. TOWNSHIP ORGANIZATION, § 39*—*when highway commissioner may sue in name of town.* A commissioner of highways may bring an action in the name of a town.

9. APPEAL AND ERROR, § 126*—*when freehold involved.* The Ap-pellate Court does not have jurisdiction of an appeal concerning perpetual rights of drainage, since freehold is involved.

10. EQUITY, § 5*—*when court has jurisdiction of land in another county.* A court of chancery has jurisdiction under section 3 of the Chancery Act (J. & A. ¶ 883) of a controversy over the rights to cast water onto lands within the county, notwithstanding that the property from which it is conducted lies in an adjoining county.

11. EQUITY, § 524*—*when sheriff may execute decree in adjoin-ing county.* The question of the power of a sheriff to execute in an adjoining county a decree prohibiting the casting of water onto land within the county, *held* not necessarily involved, where it did not appear that he would be required to perform any act in the adjoining county.

Appeal from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 27, 1914. Re-hearing denied April 7, 1915.

CORNELIUS REARDON and JOHN SMALL, for appellants.

J. L. O'DONNELL, T. F. DONOVAN, J. A. BRAY and FRANK H. HAYES, for appellees.

MR. PRESIDING JUSTICE CARNES delivered the opin-ion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

This is an appeal from a decree of injunction rendered on an amended bill filed by the Commissioner of Highways of the Towns of Lisbon and Saratoga against the appellants, Susan and Richard Duckworth, and the appellees Benjamin Jacobson and Hendrick Hendrickson, in matter of tile drainage of lands affecting a public road.

The township of Lisbon in Kendall county lies north of and adjoining the township of Saratoga in Grundy county. There is a public highway, established in 1856, between the two towns, which is under the control and management of the two boards of highway commissioners of said towns, acting as one body. Benjamin Jacobson owns the N. W. ¼ of Section 6 and about sixty acres of land adjoining on the south in Saratoga township, through which sixty acres extends Moore Creek, running in a southeasterly direction. Susan Duckworth owns the quarter section in Lisbon township adjoining the Jacobson land on the north and separated therefrom by said town line road. Her husband, Richard Duckworth, has charge of her land. Hendrick Hendrickson owns a tract of land adjoining the Duckworth land on the east. The three tracts in a state of nature drain southerly into Moore Creek, but are so nearly level that portions of each tract cannot be successfully cultivated without artificial channels; and that portion of the land near the point in the road where the three tracts meet is low and consequently wet if not artificially drained. A part of the Duckworth quarter section naturally drains southerly onto the Jacobson land at or near this point (the northeast corner of the Jacobson land and the southeast corner of the Duckworth land), and another part naturally drains onto the Jacobson land at a point about eighty rods west, and thence southerly to the creek; and probably another small part naturally drains onto the Jacobson land at a point still further west. These lands were occupied as farms about 1850, and in the next five years open ditches were dug by the owners

to facilitate draining in the direction of the natural depressions leading to the creek. There was a ditch from near the northeast corner of the Jacobson land southwesterly to the creek, and one running southerly from a point about eighty rods west, and others from the north, on the Duckworth lands, connecting with these ditches. The drainage so provided left the greater part of the land near the ditches unfit for cultivation, and it was used for pasture, and while there is evidence of some effort to keep the ditches open from time to time, it is quite clear that for many years before this suit was begun, and probably before the Farm Drainage Act of 1889, they had, as is usual with open ditches on prairie land used for pasture, filled up so much that they could not be considered as constituting a system of drainage.

On May 20, 1891, a written contract was entered into by the highway commissioners and Jacobson, and Jacobson's then co-owner of the land, in which it was agreed that Jacobson should lay a tile from a point designated in the north side of the road north of the northeast corner of the Jacobson land across that land into said creek, beginning in the highway with a nine-inch tile and increasing in size to a twelve-inch tile where it entered the creek, with the right to the commissioners to connect therewith for the purpose of draining the highway, and that the commissioners should pay a stated part of the expense of the work. All of which was accordingly done, and the commissioners laid tile some distance east and west in the road to connect therewith.

The drain so constructed was sufficient to take care of the surface water naturally deposited on the highway and Jacobson's land, and to enable him to cultivate all his land. The commissioners placed a culvert in the road to take the water accumulating on the north side of the pike and conduct it towards this tile drain, and with these improvements the road was fit for travel.

114     APPELLATE COURTS OF ILLINOIS.

Town of Saratoga et al. v. Jacobson et al., 193 Ill. App. 110.

About the year 1906, the Duckworths tiled their land ending in a nine-inch tile inside their fence two or three feet below the natural surface, and from thence dug a ditch into the highway and in the north side of the highway to the head of the Jacobson tile, and connected branches on different parts of their farm with this main tile, thus bringing water to the point of outlet that, but for the tiling, would have drained south eighty rods or more west of the point of outlet. Hendrickson connected tile from his land with the road tile emptying into the Jacobson tile. The commissioners built a large concrete culvert to let the water cross from the north side of the road into the Jacobson tile. The result was that the Jacobson tile would not take care of the water so brought to it, and he was unable to cultivate his land. He put an iron shingle between two sections of the tile inside his fence which relieved the situation as to him, but of course made it worse as to the highway.

The commissioners filed a bill to compel him to remove the obstruction and to enjoin him from further obstructing the flow of water through the tile. Jacobson answered the bill, and a partial hearing developed the facts above stated in relation to the Duckworth and Hendrickson tiles. Thereupon an amended bill was filed by the commissioners making Hendrickson and the Duckworths parties defendant. Hendrickson defaulted. The Duckworths answered and filed a cross-bill, claiming the right to drain the water from their land onto the highway and across Jacobson's land, and praying an injunction restraining the commissioners and Jacobson from interfering with such drainage. All the parties except Hendrickson answered the cross-bill. The chancellor heard the evidence and entered a decree granting the relief prayed in the original bill, and dismissing the cross-bill for want of equity, from which decree this appeal is prosecuted.

The decree after finding the facts substantially as above stated, and ordering Jacobson to remove the

obstruction, and ordering Hendrickson to disconnect his tile and enjoining him from again connecting it with the tile in the highway, ''ordered  *  *  *  that Susan Duckworth and Richard Duckworth be enjoined from further connecting or attempting to connect their said trunk line of tile with the joint ditch aforesaid by means of excavations or otherwise; and that the said highway at the place where said excavations were made by Susan Duckworth and Richard Duckworth be restored to its former condition; and that Susan Duckworth and Richard Duckworth be perpetually enjoined from draining onto the highway, without the consent of said commissioners of highway, at the southeast corner of the southwest quarter (S. W. ¼) of said Section thirty-one (31); and that the commissioners of highway be, and they are, hereby authorized to restore the highway to the condition in which it was upon the north side thereof opposite the mouth of said tile of Susan Duckworth and Richard Duckworth at the time said tile was laid.

''It is further ordered, that in case of default or refusal on the part of any or either of said parties to obey the mandate of this decree, the sheriff of Grundy county do forthwith execute the same.''

Appellants say that the clause in the above order enjoining them from draining onto the highway at the southeast corner of their farm, without the consent of the commissioners, means that they are required to prevent water that would in a state of nature flow from their lands onto the highway at that point from so doing, and consequently that the decree is absurd, incapable of execution in any reasonable way, and broader than the prayer of the bill. We do not think the language of the decree requires or even admits of such a construction. The order, when read in connection with the finding of facts in the decree, means that appellants are enjoined from draining water onto the highway at that point by means of artificial channels in the highway. If they are able to accelerate

116    APPELLATE COURTS OF ILLINOIS.

Town of Saratoga et al. v. Jacobson et al., 193 Ill. App. 110.

the natural flow of water to that point by means of ditches, and allow it to discharge itself over the natural surface of their own lands onto the highway, they have the right to do so; but they are not permitted to bring water to that part of the highway that would naturally be delivered at a different place. The law does permit them by drains on their own land to conduct water onto servient lands, accelerating its flow along natural depressions and water courses, and thereby precipitate water on the lower lands that would in a state of nature evaporate or seep into the soil; but they must not conduct water out of its natural water course and must not make excavations on the lower lands. It does not appear that they could within the limits above indicated drain water onto the highway; but if they can we are of the opinion that the decree should not be read as preventing them from so doing.

The case of *Peck v. Herrington*, 109 Ill. 611, defines the rights of the owner of higher lands, the dominant heritage, to conduct water by drains and ditches onto lower lands, the servient heritage, of another; and it is there held that he cannot construct drains or ditches so as to create new channels for water on the lower field. And in *Fenton & Thompson R. Co. v. Adams*, 221 Ill. 201, the court reviewed that and other cases on the same subject, and held that one may change a natural water course, but he must restore the water to its natural channel within the limits of his own land so that it will flow upon the servient estate at the same place as before. Therefore appellants had no right, even by channels dug entirely on their own land, to conduct water to the point in question that would in a state of nature be discharged upon the highway at points west thereof.

It is suggested that appellants own the land to the center of the road subject to the easement, and therefore that as between them and the commissioners the rule that applies in case of a private owner of lower lands does not here apply. The perpetual easement

of the public is a freehold, and under the authority of *Young v. Highway Com'rs Macon Tp.,* 134 Ill. 569, and *People v. Magruder,* 237 Ill. 340, the situation is no more favorable to appellants than if the land in the road was owned by a private individual.

The tile drain of the commissioners and Jacobson, with which appellants connected, is a drain within the Act of 1889, entitled "Ditches Constructed by License" (J. & A., vol. 3, page 2516, ¶ 4594). It is provided in section 2 (J. & A. ¶ 4595) of that act that no party interested in such drain shall authorize any other person to connect therewith without the consent of all the parties interested in the drain; and further provided that any party interested may by bill in chancery compel a person so connecting without authority to fill the drain. Appellants had no right to connect with this drain without the consent of the commissioners and Jacobson (*Funston v. Hoffman,* 232 Ill. 360), and there is no claim that they had the consent of either.

That highway commissioners may bring the action in the name of the towns, is held in *Town of Crooked Creek v. King,* 252 Ill. 126.

There is some argument that rights of perpetual drainage in the old ditches made before 1860 are involved and invaded by the decree. If that question is involved appellants have mistaken their forum in taking their appeal. *Funston v. Hoffman, supra.* No point is made in briefs of counsel that a freehold is involved and therefore that this court had not jurisdiction, and we are of the opinion that under the pleadings and the evidence there is no controlling question of any right of appellants resting on the facts concerning those ancient ditches. It is not sought in this proceeding to restore appellants to any rights in an open ditch constructed before the Act of 1889, but rather to give them rights in a tile drain constructed since that day by other parties.

It is argued that the court did not have jurisdiction

to enter a decree affecting appellants' lands, because they were not located in the county in which the court was held.. We are of the opinion that the suit is within the provision of section 3 of our Chancery Act (J. & A. ¶ 883), that suits which may affect real estate shall be commenced in the county where the same or some part thereof is situated.

It is assigned as error and argued that the court erred in ordering the sheriff of its county (Grundy) to execute the mandate of the decree, and our attention is called to the statute and authorities to the effect that a sheriff can act as such only in the territory of his own county. No authority is cited in which a situation like the one presented here is discussed. The court having jurisdiction of the subject-matter, had power to enforce its decree. In the absence of any authority cited as to what instrumentality might be used, whether its own sheriff as sheriff, or as a commissioner of the court might lawfully so act, and in view of the fact that the principal mandatory order is that Jacobson remove the obstruction in his tile, which obstruction is in Grundy county, and that it does not appear that the sheriff of Grundy county will be required under the order to do any act in Kendall county, we do not feel called upon to investigate or decide through what instrumentalities a court having jurisdiction of matters affecting lands in its own and other counties should enforce its decree; and we are not inclined to reverse the case on that ground.

Finding no reversible error in the record, the decree is affirmed.

*Affirmed.*